JENNIFER MATHIS (Utah Bar No. 11475)
jennifer.mathis@troutmansanders.com
THOMAS H. PROUTY (*pro hac vice*)
thomas.prouty@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, California 92614
(949) 622-2721

DAVID M. GISCHE (*pro hac vice*)
david.gische@troutmansanders.com
Troutman Sanders LLP
401 9th Street NW, Suite 1000
Washington, DC  20004
Telephone:  (202) 662-2015

Attorneys for Defendant/Counter-Claimant XL Specialty Insurance Company

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES MORDEN, JENALYN MORDEN, and WADE MORDEN, <br><br> Plaintiffs, <br><br> v. <br><br> XL SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:14-cv-00224-CW-PMW <br><br> **DEFENDANT/COUNTER-CLAIMANT XL SPECIALTY INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO VOLUNTARILY DISMISS, WITHOUT PREJUDICE, REMAINDER OF COUNTERCLAIM AND FOR ENTRY OF JUDGMENT** <br><br> Honorable Clark Waddoups |
| XL SPECIALTY INSURANCE COMPANY, <br><br> Counter-Claimant, <br><br> v. <br><br> JAMES MORDEN, JENALYN MORDEN, and WADE MORDEN, <br><br> Counter-Defendants. | |

28585501

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     THE MOTION SHOULD BE GRANTED BECAUSE THE MORDENS HAVE
        NOT SHOWN, AND CANNOT SHOW, LEGAL PREJUDICE ................................... 1

        A.      The Mordens Fail to Articulate Any Unjust Prejudice ......................................... 1

        B.      The Mordens Cite No Case Law Supporting Their Position ................................ 3

        C.      All of the Relevant Factors Weigh Heavily in Favor of Granting the
                Motion ........................................................................................................... 3

                1.      The Opposing Party's Effort and Expense in Preparing for Trial ............ 3

                2.      Excessive Delay or Lack of Diligence on the Movant's Part ................... 4

                3.      The Movant's Reason for the Request ...................................................... 5

                4.      Present Stage of the Litigation ................................................................. 5

                5.      The Only Remaining Claim Seeks Declaratory Relief ............................. 6

III.    THE MORDENS' UNSUPPORTED AND NOVEL "TANTAMOUNT TO A
        COUNTERCLAIM" ARGUMENT CLEARLY FAILS ................................................ 7

IV.     THE MORDENS' REQUEST FOR THEIR FEES AS A "CURATIVE
        CONDITION" IS UNSUPPORTED ......................................................................... 10

V.      CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brown v. Baeke,*
   413 F.3d 1121 (10th Cir. 2005) .....................................................................................6

*Ohlander v. Larson,*
   114 F.3d 1531 (10th Cir. 1997) ............................................................... *passim*

*Strawberry Water Users Assn. v. United States,*
   576 F.3d 1133 (10th Cir. 2009) .....................................................................................6

*United States v. City of Las Cruces,*
   289 F.3d 1170 (10th Cir. 2002) .....................................................................................6

*Webco Industries, Inc. v. Diamond,*
   2012 U.S. Dist. LEXIS 170381 (N.D. Okla. Nov. 30, 2012) ...................................................3

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,*
   170 F.3d 985 (10th Cir. 1999) .....................................................................................6

OTHER AUTHORITIES

Fed. R. Civ. Proc. 8(c)(2).....................................................................................7, 9

Fed. R. Civ. Proc. 15 and 16.....................................................................................8

## I.      INTRODUCTION

The Mordens do not dispute that "[a]bsent 'legal prejudice' to the defendant, the district court normally should grant" a motion to voluntarily dismiss without prejudice.  *Ohlander v. Larson,* 114 F.3d 1531, 1537 (10th Cir. 1997).  However, the Mordens have not, and cannot, show the unfair prejudice necessary to defeat the motion.  The Court has already adjudicated all of the Mordens' claims, and the only remaining claim is the portion of XL's declaratory relief counterclaim raising Exclusion J as a coverage defense.  Any negative consequences that the Mordens may face from this Court granting the motion and entering judgment are of their own making and patently insufficient.  Furthermore, the Mordens' argument that their answer to XL's counterclaim is somehow equivalent to an affirmative claim (or counterclaim) for relief that precludes voluntary dismissal here is completely unsupported and contrary to the law.[1]

## II.     THE MOTION SHOULD BE GRANTED BECAUSE THE MORDENS HAVE NOT SHOWN, AND CANNOT SHOW, LEGAL PREJUDICE

### A.      The Mordens Fail to Articulate Any Unjust Prejudice

Despite the Mordens' claim that granting the motion would "unjustly prejudice" them, the Mordens do not explain what this "unjust prejudice" actually is.  They assert that if the case were to continue, the Court would decide the remainder of XL's declaratory relief counterclaim in the Mordens' favor.  XL disagrees.  But setting aside the merits for the moment, even if the Mordens' prediction were to hold, the result would only be a declaration that a coverage defense

---

[1] The Mordens' argument here is similar to the equally erroneous and unsupported claim made in their reply on their motion for leave to amend that they "had no reason to amend their complaint to add a breach of contract claim" because they had answered XL's counterclaim and denied XL's entitlement to declaratory relief regarding certain coverage defenses.  (*See* Dkt. 86 at 2.)  A plaintiff's answer to a defendant's counterclaim denying that the defendant is entitled to declaratory relief is <u>not</u> the same, or even the functional equivalent, of the plaintiff making an affirmative claim for damages for breach of contract.  As discussed below in Section III (and footnote 4), the law required the plaintiffs to actually, and timely, move to amend their complaint – they cannot rely on denials or defenses being "tantamount" to affirmative claims.

does not apply.  It would not be a judgment that XL is liable for some amount of damages proximately caused by breach of the insurance policy.  The Mordens have nothing to gain or lose, other than perhaps the personal satisfaction of knowing whether or not Exclusion J applied.  That does not rise to the level of unjust prejudice nor require this Court to decide the issue.  Further, as the Tenth Circuit observed in *Ohlander*, a party opposing a motion to voluntarily dismiss "is hard pressed to argue he is prejudiced by his own actions."  114 F.3d at 1537.  The Mordens cannot use their own faults to establish prejudice.

The Mordens also note that XL's motion is "without prejudice," and that the Mordens could be "forced to reinvent the wheel by relitigating this case to the same juncture in a future case if XL refiles."  (Dkt. 85 at 7.)  The Mordens' fear is unfounded and easily curable.  For example, in *Ross v. Rothstein* (cited in XL's motion, but not addressed in the opposition), in seeking to dismiss his remaining counterclaims without prejudice after all other claims in the case had been decided in his favor, the defendant explained that he only requested dismissal "without prejudice" to preserve the claims in the event the district court's rulings were reversed on appeal, and he agreed not to bring the claims in a separate lawsuit.  2015 U.S. Dist. LEXIS 82490, *7-8 (D. Kan. June 25, 2015).  The district court concluded that the defendant's position was "reasonable, rational, and weigh[ed] in favor of granting defendant's motion without prejudice."  *Id*.  The court therefore granted the motion, but placed restrictions on the defendant's ability to commence another lawsuit on the same claims.  *Id*. at *11-12.  Like the defendant in *Ross*, XL has no intention of commencing a separate lawsuit and has only requested dismissal "without prejudice" in the unlikely event of a reversal on appeal.

**B.     The Mordens Cite No Case Law Supporting Their Position**

The Mordens fail to cite case law supporting their position.  In *Clark v. Tansy* (cited on pp. 2-3 of the opposition), the Tenth Circuit held that the court abused its discretion in *refusing* to *grant* a motion to voluntarily dismiss without prejudice.  13 F.3d 1407, 1413 (10th Cir. 1993).  The Tenth Circuit also held that the district court in *Ohlander* (cited on p. 2) abused its discretion in refusing to grant a motion to voluntarily dismiss without prejudice.  114 F.3d at 1533.

The Mordens rely heavily on *Webco Industries, Inc. v. Diamond*, 2012 U.S. Dist. LEXIS 170381 (N.D. Okla. Nov. 30, 2012), but that case is easily distinguishable.  In *Webco*, the plaintiff moved to dismiss affirmative claims for damages after the defendant had filed a meritorious motion for summary judgment that would have defeated those claims, and the *only* reason that the movant gave for the request was a desire "to streamline the litigation and reduce costs."  *Id*. at *1, *9-11.  In this case, unlike in *Webco*:  (1) the movant is the defendant; (2) the motion only seeks to dismiss the remaining portion of a counterclaim for declaratory relief; (3) the motion follows an order adjudicating all of the plaintiffs' pled claims against the defendant in the defendant's favor; (4) there has been no dispositive motion filed by either party regarding the remaining portion of the counterclaim sought to be dismissed, and no ruling on its merits; and (5) the defendant has a strong, rational and reasonable reason for moving to dismiss.

**C.     All of the Relevant Factors Weigh Heavily in Favor of Granting the Motion**

All of the relevant factors bearing on legal prejudice favor granting the motion and entering judgment.

**1.     The Opposing Party's Effort and Expense in Preparing for Trial**

In *Ross*, although discovery was completed and the plaintiff had actually begun trial preparation and filed pre-trial motions, the court found that the factor concerning "the opposing

3

party's effort and expense in preparing for trial" factor actually favored *granting* the defendant's motion, because the plaintiff "*produced no evidence showing* that he expended significant time or effort" on the remaining counterclaims, *as opposed to the other claims* that were adjudicated. 2015 U.S. Dist. LEXIS 82490, at *8-9 (emphasis added).  The same is true here:  the Mordens have presented *no* evidence with their opposition, let alone evidence showing "significant" time spent on the remainder of XL's declaratory relief counterclaim – Exclusion J.  And the Mordens *cannot* make that showing.  Exclusion J played no part in any of the summary judgment briefing, nor has it been the subject of any other motions.  It also has not been the subject of targeted written discovery.  The Mordens can only say that they asked one deposition question regarding Exclusion J of one XL witness (but not the other two witnesses), with no follow-up questions.

### 2.    Excessive Delay or Lack of Diligence on the Movant's Part

Regarding the "excessive delay/lack of diligence" factor, the Mordens only conclusorily state that there was delay, without explaining what it was, or what the courts have said about this factor.  (Dkt. 85 at 4.)  This obviously is insufficient.  Moreover, the Tenth Circuit has made clear that this factor focuses *not* on the length of time from the filing of the claim, but from the occurrence of "the most persuasive reason to file a motion to dismiss."  *Ohlander,* 114 F.3d at 1538.  Here, the "most persuasive reason" was this Court's Memorandum Decision and Order (the "Decision"), entered on April 5, 2016, which summarily adjudicated all of the Mordens' claims in XL's favor.  (Dkt. 80.)  XL then brought its motion later that same month and nothing happened in the interim.  This is not excessive delay or lack of diligence.[2]

---

[2] *See Ross*, 2015 U.S. Dist. LEXIS 82490, at *9 (where defendant waited "only 19 days" to request dismissal of his remaining counterclaims after the district court summarily adjudicated all other claims in the case, the delay/diligence factor favored granting the motion, because "[a] delay of 19 days is certainly reasonable[.]")

### 3.      The Movant's Reason for the Request

All claims pled in this action have been adjudicated, except for one aspect of XL's counterclaim for declaratory relief, *i.e.* whether Exclusion J applies.  To obtain a judicial declaration on that question would require a significant amount of time and resources, including a further round of summary judgment briefing and possibly a trial. The Court's Decision makes answering that question unnecessary at this time and unlikely at any future time.  XL's request for voluntary dismissal is not a reflection of its views on the merits of its Exclusion J coverage defense; it is a reflection of the fact that resources should not be consumed to obtain unnecessary declarations from the courts.  This factor favors XL.

### 4.      Present Stage of the Litigation

The "present stage of the litigation" factor also clearly supports granting XL's motion and entering judgment.  No trial date has been set, and no pretrial motions or other documents have been filed.  The Mordens have only stated that the motion was filed "after the close of extensive discovery, the completion of multiple dispositive motions, and significant motion practice by the parties."  (Dkt. 85 at 4.)  However, none of the motions filed in this case involved Exclusion J, and Exclusion J was not the subject of "extensive discovery."

Exclusion J precludes coverage for claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the Insured's rendering of investment banking services, including . . . the . . . promoting of any debt or equity securities[.]"  This exclusion applies to the Mordens' "Mexican mine" investment, because the evidence and the Mordens' own allegations against Deru and Belsen Getty show that the investment arose out

28585501

of Deru promoting securities in Vermillion Holdings, Inc., the corporation in which the Mordens

invested.  *See* Exhibit A hereto (the Mordens' Complaint against Deru/Belsen Getty) at ¶¶31-50.[3]

Tellingly, the Mordens' opposition does not grapple with Exclusion J's language or its

application to the Mexican mine investment.  Instead, it just asserts that "XL's confidence is

misplaced" because, despite all of the evidence showing Exclusion J's application to the

Mexican mine investment, one of XL's witnesses said in her deposition only that:  "sitting here

today, this would refer to the 9Mile IPO."  The Mordens' counsel did not ask any follow up

questions, such as whether XL believed that the defense also applied to the Mexican mine

investment, and if so, what the basis for such belief was.  In these circumstances, XL clearly

would not be prohibited from introducing facts, including the Mordens' own admissions and

other sworn testimony, to prove that Exclusion J applies.  *Cf. Woodworker's Supply, Inc. v.

Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (identifying and weighing

several factors, and affirming order allowing evidence of facts allegedly not disclosed in

discovery where, among other things, the facts were known or available to the adverse party).

### 5.    The Only Remaining Claim Seeks Declaratory Relief

Another circumstance that the district court may consider is that the only remaining claim

is a request for declaratory relief.  *See Brown v. Baeke*, 413 F.3d 1121, 1124 (10th Cir. 2005)

(the above-discussed factors are not exhaustive).  Whether to entertain such a claim, and whether

any relief should be granted, is within the district court's discretion, even when the suit otherwise

satisfies subject matter jurisdiction prerequisites.  *Strawberry Water Users Assn. v. United States*,

576 F.3d 1133, 1142 (10th Cir. 2009); *United States v. City of Las Cruces*, 289 F.3d 1170, 1180-

---

[3] Evidence also shows that Deru did not invest his own money in Vermillion, but obtained his
interest by volunteering his fund-raising efforts – the classic sign of a person acting as a
corporate promoter.

81 (10th Cir. 2002).  The Mordens cannot claim "legal prejudice" from this Court allowing the dismissal of a claim that the Court has discretion not to hear – and this is particularly true after the Court has already adjudicated all of the Mordens' properly pled claims.

## III.   THE MORDENS' UNSUPPORTED AND NOVEL "TANTAMOUNT TO A COUNTERCLAIM" ARGUMENT CLEARLY FAILS

Relying on Rule 8(c)(2), the Mordens argue that this Court should treat their response to XL's counterclaim as being "tantamount to a counterclaim" by the Mordens.  The Mordens' argument fails for several reasons.  First, Rule 8(c)(2) expressly comes into play only if a party "mistakenly" designates either a counterclaim or defense as the other.  Here, the Mordens do not claim to have made a mistake, let alone explain what that mistake was.  The Mordens cannot seriously claim that the statement in their answer to the counterclaim – *i.e.*, that "XL's claims in the counterclaim are barred in whole or in part based on its own breaches of the Policy, including but not limited to its conduct described in the Complaint" – was really intended to be an affirmative claim for breach of contract (or some other claim).  It does not even begin to allege such a claim's essential elements, nor does it pray for damages (or any other relief).

Even if Rule 8(c)(2) did apply, the Mordens do not even attempt to answer the prerequisite contained in the rule:  why does "justice require" that the Mordens' response to XL's counterclaim be treated as a counterclaim?  The Mordens' failure to articulate (let alone prove) any such reason is sufficient to reject their argument.  Moreover, it is clear that justice does *not* require this Court to treat the Mordens' response to XL's counterclaim as a counterclaim.  In fact, federal courts faced with such questions have required the plaintiff to move to amend his complaint (as opposed to filing a counterclaim-in-reply) so as to prevent end-

runs around Rules 15 and 16 and the court's scheduling order.[4]  Here, the law would not have

even allowed the Mordens to assert a counterclaim in response to XL's counterclaim (let alone

rely on denials and defenses to XL's counterclaim) to state an affirmative claim against XL.

Certainly, then, justice does not require that the Mordens' response to XL's counterclaim be

treated as a "counterclaim" to defeat a motion that "normally" should be granted.  *Ohlander,* 114

F.3d at 1537.

   The cases that the Mordens cite are inapposite.  *United States v. Golden West Constr. Co.*

involved a defendant legally unable to maintain a counterclaim because it was a foreign

corporation not qualified to do business in Utah.  194 F. Supp. 371 (D. Utah 1961).  The district

court held that while the defendant could not maintain its affirmative counterclaim, it could have

asserted the same facts underlying the counterclaim as an offset defense.  Thus, an illegal

counterclaim for money owed was treated as a claim for setoff against any money otherwise

found owing to plaintiff.  *Id.* at 374-75.  Similarly, *Rabin v. Fidelity National Property & Cas.*

*Ins. Co.* involved the defense of "recoupment" and the claim of "setoff" – two doctrines that

"while distinct, are closely related and easily confused."  863 F. Supp. 2d 1107, 1119 (D. Colo.

---

[4] *See Orient Mineral Co. v. Bank of China*, 2010 U.S. Dist. LEXIS 14533, *37-41 (D. Utah Feb. 19, 2010) (recognizing that only a "handful of courts" have fashioned a very limited exception to the rule against "counterclaims-in-reply"); *Cory Food Service, Inc. v. United Vending Services, Inc.*, 1976 U.S. Dist. LEXIS 13370, *1 (D. Utah Sept. 3, 1976) ("The court deems peculiar plaintiff's denomination of his pleading as a 'counterclaim' arising out of the same transaction or occurrence that was the subject matter of defendant's previously filed and proper counterclaim. Plaintiff, upon perceiving a new cause of action, should have moved this court for leave to amend plaintiff's original complaint."); *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 2014 U.S. Dist. LEXIS 65493, *23, n.7 (N.D. Okla. May 13, 2014) (recognizing that "federal courts have applied Fed. R. Civ. P. 15 where plaintiff sought to raise a new claim as a counterclaim."); *Old Town Industries, Inc. v. Ryan*, 2010 U.S. Dist. LEXIS 83049, *4 (D. Colo. July 12, 2010) (Plaintiff cites [citation omitted] for the proposition that there is nothing inherently improper in asserting a counterclaim in a reply.  I need not resolve whether this case is applicable because the circumstances presented here show that Plaintiff is attempting to assert new claims against Defendants.  This is governed by Fed. R. Civ. P. 15 and, as Plaintiff has already been told by [the Magistrate], the proper procedure at this point is to file a motion to amend the complaint.").

2012).  The defendant pled a recoupment defense but later requested that it be "re-designated" as a setoff counterclaim.  The court granted the request, noting:  (a) the plaintiff did *not* contest the request; and (b) the defendant's claim was more in the nature of a setoff counterclaim anyway. *Id*. at 1120.  *Golden West* and *Rabin* – neither of which involved a motion to voluntarily dismiss – are a far cry from this case.

Significantly, in the only case cited by the Mordens that involved Rule 8(c)(2) in the context of a motion to voluntarily dismiss, the Tenth Circuit flatly rejected an argument similar to the Mordens' argument here.  In *Ohlander*, the party opposing the motion argued that his response to the petition should be treated as a counterclaim.  114 F.3d at 1539.  The respondent did not actually assert any counterclaims in his response and had asserted affirmative claims against the petitioner in another proceeding.  *Id*.  Recognizing the general proposition that "a court may construe a pleading mistakenly designated as a defense as a counterclaim *when justice requires*," the court concluded that "[j]ustice does not require us to tortuously construe" the response in order to retain jurisdiction.  *Id*.  This was particularly true given that the respondent had asserted some affirmative claims elsewhere.  *Id*.  The same rationale applies here.  The Mordens were the ones that commenced this lawsuit, and their complaint against XL was their opportunity to allege their affirmative claims for relief against XL.  The Rules provided the Mordens with ample opportunity to properly allege an affirmative claim for breach of contract in this action.  If the Mordens' failure to allege a breach of contract claim was not a strategic one and XL's counterclaim for declaratory relief somehow reminded them that they had such a claim (a dubious proposition), they were required to timely seek leave to amend their complaint.

9

**IV.    THE MORDENS' REQUEST FOR THEIR FEES AS A "CURATIVE CONDITION" IS UNSUPPORTED**

The Mordens request that the Court award them "their reasonably incurred attorney fees" as a "curative condition" if the Court grants the motion.  This request should be denied.  If anyone is entitled to costs, it would be XL as the prevailing party.  Furthermore, the Mordens have presented no evidence that they have incurred any fees litigating Exclusion J.  The Mordens' request is similar to the one made, and rejected, in *Ross*.  In that case, where the defendant moved to dismiss his remaining counterclaims after prevailing on all other claims, the plaintiff asked the district court to require a dollar-for-dollar reduction in any costs and fees awarded to the defendant by the amount of costs and fees incurred by the plaintiff in litigating the voluntarily dismissed claims.  *Ross*, 2015 U.S. Dist. LEXIS 82490, at *13-14.  The district court – which also held that the defendant/movant was, in fact, the prevailing party entitled to costs, despite the dismissal of the remainder of his counterclaims – declined to impose the requested condition, in part because the plaintiff had failed to submit evidence showing that significant time was actually spent on the claims being dismissed.  *Id*. at *25.

Should the Court grant the motion and enter judgment, XL will waive its right to costs as the prevailing party and consent to an order prohibiting it from commencing an action against the Mordens regarding application of Exclusion J. These conditions are more than adequate to ameliorate any potential harm to the Mordens.

**V.    CONCLUSION**

For the reasons discussed above and in the motion, XL respectfully requests that the Court grant the motion and enter judgment in this action.

10

DATED this 9th day of June, 2016      Respectfully submitted,

TROUTMAN SANDERS LLP


By:   /s/ Jennifer Mathis
     Jennifer Mathis (Utah Bar No. 11475)
     David M. Gische
     Thomas H. Prouty

Attorneys for Defendant and Counter-Claimant
XL Specialty Insurance Company