IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES MORDEN, et al.,<br><br>       Plaintiffs,<br><br>v.<br><br>XL SPECIALTY INSURANCE CO.,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:14-cv-00224<br><br>Judge Clark Waddoups |

Before the court are Defendant XL Specialty Insurance Company's (XL's) motion to voluntarily dismiss its counterclaim (Dkt. No. 81) and Plaintiffs James, Jenalyn, and Wade Morden's (collectively, the Mordens') motion to amend the complaint (Dkt. No. 82). For the reasons that follow, the court now grants the motion to dismiss and denies the motion to amend.

## BACKGROUND

This case arises out of the Mordens' complaint against XL for bad faith denial of insurance coverage and breach of its fiduciary duty to its insureds, Terry Deru and Belsen Getty (collectively, Belsen Getty), stemming from XL's determination that the Mordens' claim was not covered under Belsen Getty's policy because it was excluded by the policy's interrelated wrongful acts provision. (Dkt. No. 2). XL answered the complaint, asserting twenty-five affirmative defenses and claiming that various policy exclusions, in addition to the interrelated wrongful acts exclusion, applied to exclude coverage for the Mordens' claim. (Dkt. No. 12). XL also filed a counterclaim for declaratory judgment that "no coverage exists under the Policy for any aspect of the *Morden* Action, that no coverage exists under the Policy for any part of the Mordens' and the [Belsen Getty's] alleged settlement of the *Morden* Action, that XL is not

obligated to pay any part of any such settlement, and that XL did not act in bad faith with respect to the *Morden* Action" because 1) the Mordens' claim was excluded from coverage under the policy's interrelated wrongful acts provision, and 2) the Mordens' claim was excluded from coverage because it was based on Belsen Getty's rendering of investment services. (*Id.*).

The Mordens sought partial summary judgment on eight of XL's affirmative defenses and on XL's declaratory judgment counterclaim involving the interrelated wrongful acts provision. In turn, XL sought judgment that it had not acted in bad faith or breached its fiduciary duties in denying the Mordens' claim. Five motions and cross-motions for summary judgment, (Dkt. Nos. 25, 30, 46, 50, 53), a lengthy oral argument, and supplemental briefing (Dkt. Nos. 67, 70, 71, 72, 76, 77, 78, 79) followed. Ultimately, the court issued a memorandum decision and order granting the Mordens' motion for summary judgment on XL's counterclaim that the Mordens' claim did not fall within the policy's interrelated wrongful acts exclusion. (Dkt. No. 80). But the court nevertheless concluded that XL was entitled to summary judgment on the Mordens' complaint because, irrespective of whether there was coverage under the policy, XL did not act in bad faith or breach its fiduciary duties in concluding that the Morden claim was not covered. (*Id.*).

XL has now sought to dismiss its remaining counterclaim for declaratory judgment without prejudice. (Dkt. No. 81). The Mordens oppose the motion and have moved to amend their complaint to add a claim that XL is contractually obligated to indemnify Belsen Getty for the Mordens' claim up to the policy limit of $1,000,000. (Dkt. Nos. 82, 85). The Mordens assert that amendment is necessitated by XL's dismissal of its counterclaim because the counterclaim is the inverse of an indemnification claim and, therefore, resolution of the counterclaim would have required the court to determine whether there was coverage under the policy. (*Id.*). Thus, the

Mordens argue, it was unnecessary for them to affirmatively plead an indemnification claim against XL so long as XL's counterclaim was in play. (*Id.*). Alternatively, the Mordens request that the court award them attorney fees incurred litigating XL's counterclaim.

Because the Mordens' basis for amendment is XL's dismissal of its counterclaim (*see* Dkt. No. 86 pp. 3–4), the court begins by considering the motion to dismiss. Because the court concludes XL is entitled to voluntarily dismiss its counterclaim, the court next considers whether this dismissal establishes good cause for amendment. Ultimately, the court concludes amendment is not appropriate in these circumstances.

## ANALYSIS

### *A. XL is entitled to dismiss its counterclaim.*

XL asks the court to dismiss its counterclaim pursuant to Federal Rule of Civil Procedure 41(a)(2). Rule 41(a)(2) permits a party to dismiss an action voluntarily "only by court order, on terms that the court considers proper." *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (internal citation omitted). But "[a]bsent legal prejudice to the defendant, the district court normally should grant such a dismissal." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997) (internal quotation marks omitted). Although the "parameters of what constitutes 'legal prejudice' are not entirely clear," the Tenth Circuit has identified several non-exhaustive factors a court should consider, including: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of the litigation." *Id.* The district court is cloaked with wide discretion in evaluating whether dismissal is appropriate given the unique circumstances presented by any given case. *Brown*, 413 F.3d at 1124 (explaining that a district court's exercise of this discretion will be upheld unless it was "arbitrary, capricious, whimsical,

or manifestly unreasonable"). Considering XL's motion to dismiss under the factors identified by the Tenth Circuit and the circumstances presented here, the court concludes that voluntary dismissal is appropriate.

To begin, XL's justification for dismissal is persuasive. XL's position in this litigation was that if there is no coverage under the policy, it could not have acted in bad faith in denying the Mordens' claim. The determination that XL neither acted in bad faith nor breached any fiduciary duties—irrespective of whether the Mordens' claim was covered—renders declaratory judgment as to coverage, from XL's perspective, irrelevant. Likewise, there does not appear to be excessive delay or lack of diligence on XL's part in bringing this motion because it made the request shortly after the court's ruling that it had not acted in bad faith, rendering moot XL's interest in obtaining a declaratory judgment as to coverage. There is currently no trial date set and the court has resolved all of the pending dispositive motions. Accordingly, dismissal at the present stage of the litigation is appropriate.

Also weighing strongly in favor of dismissal is the fact that the Mordens do not identify any significant effort or expense that will be lost if XL is entitled to dismiss its counterclaim. And the court finds it is unlikely that the Mordens expended significant efforts in litigating the coverage issue. Indeed, the Mordens only moved for partial summary judgment as to several exclusions under the policy and the interrelated wrongful acts counterclaim. No party moved for summary judgment on the ultimate issue of coverage. Moreover, there are other exclusions in the policy that might preclude coverage for the Mordens' claim, the applicability of which have not been litigated. For instance, the policy contains an exclusion that precludes coverage for claims that are based upon Belsen Getty's rendering of investment banking services[1] or for claims that

---

[1] This exclusion is the subject of XL's counterclaim.

are brought about by any intentionally dishonest, fraudulent or criminal act or omission. (Dkt. 12-1, pp. 21, 22). The court would be required to resolve the applicability of these—or any other exclusions—before it granted XL declaratory judgment as to the issue of coverage.

Finally, the court finds that dismissal will not unfairly prejudice any relief the Mordens may seek against XL. Although the Mordens are correct that XL sought declaratory judgment that no coverage exists under the policy, their decision to rely on XL's counterclaim to provide them affirmative relief in the form of indemnification does not preclude voluntary dismissal. Contrary to the Mordens' argument, XL's claim for declaratory judgment is not the inverse of an affirmative claim for indemnification. In an analogous circumstance, a district court in the Tenth Circuit considered whether a counterclaim for a declaratory judgment determining whether an insurer had any liability in connection with its insurance policy was the mirror image of the insured's claims for breach of contract, negligence, and bad faith. *Blue Cross & Blue Shield of Kansas, Inc. v. St. Paul Mercury Ins. Co.*, No. 89-4114-R, 1990 WL 41403, at *1 (D. Kan. Mar. 23, 1990). In concluding that the claims were not the inverse of each other, the court reasoned that

> [d]efendants would have every right to seek a judgment declaring that their interpretation of the contract is the correct one. A ruling adverse to plaintiff on plaintiff's claim would merely result in a judgment that plaintiff was not entitled to the relief requested; although it might logically follow from that judgment that defendants' interpretation of the contract was the correct one, defendants would not be entitled to a judgment to that effect unless they specifically requested one.

*Id.* (quoting *Iron Mountain Sec. Storage v. Am. Specialty Foods, Inc.*, 457 F.Supp. 1158, 1161–62 (E.D.Pa. 1978)). The court believes this reasoning applies with equal force here.

Rather than be the inverse of an indemnification claim, there could be many reasons why XL's counterclaim could fail, even without the court reaching the coverage issue. The Mordens' affirmative defenses illustrate this point well. As the Mordens asserted in their reply to XL's

5

counterclaim, XL's own unclean hands might bar its claim for declaratory judgment. Or perhaps XL's counterclaim is "barred . . . based on its own breaches of the [p]olicy." (Dkt. No. 19).[2] But certainly if the Mordens had successfully moved for summary judgment on XL's counterclaim on the basis of one of these (or any other) affirmative defenses, the court could have dismissed XL's counterclaim without ever reaching the coverage issue. And in this instance the Mordens would have no enforceable judgment for indemnification in any particular amount. If the Mordens wished to have a policy determination as to coverage that would entitle them to a judgment for indemnification, they could have included a claim for indemnification in their complaint. Nothing prevented them from asserting such a claim in addition to the bad faith claims. *See* Fed. R. Civ. P. 8(d) (permitting a party to plead alternative and inconsistent claims). Thus, any possible prejudice to the Mordens as a result of their reliance on XL's counterclaim to provide them affirmative relief, which the court could have dismissed at any time without making a coverage determination, is prejudice of their own making. Accordingly, the Mordens have not established that they will be unfairly prejudiced by dismissal of XL's counterclaim and XL is entitled to dismissal under Rule 41(a)(2).

### B. The Mordens have not established good cause for amendment.

The court's dismissal of XL's counterclaim requires the court to determine if this dismissal should entitle the Mordens to amend their complaint. Because the Mordens seek to amend the complaint after the time for amendment under the court's scheduling order has

---

[2] Of course, asserting that a defendant's own contractual breaches preclude recovery is fundamentally different from asserting an affirmative claim for indemnification. There could be breaches that preclude recovery that are different from the breach of the obligation to indemnify. Importantly, the Mordens do not assert an affirmative defense that XL's claim for declaratory judgment fails because there was coverage under the Policy. (*See* Dkt. No. 19, pp. 6–7).

expired,[3] they must demonstrate both "(1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). The court begins by considering Rule 16's good cause requirement.

The court has the discretion to determine whether the moving party has established good cause in any particular case. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015). In the Tenth Circuit, good cause "requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Id.* "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.* But "[i]f the plaintiff knew of the underlying conduct but simply failed to raise [the appropriate] claims, however, the claims are barred." *Id.*; *accord Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."). Good cause to amend does not exist where a party fails to bring an available claim due to an error of law or fact, a strategic decision, or a mere oversight. Two cases illustrate this principle.

In *Gorsuch*, the Tenth Circuit considered whether the plaintiffs had established good cause to amend the complaint, after the time permitted by the scheduling order, when they attempted to add tort claims after the district court dismissed their third-party beneficiary contract claims. 771 F.3d at 1242. In support of amendment, the plaintiffs argued that the economic loss doctrine barred them from bringing tort claims while their third-party beneficiary claims were pending. Thus, they asserted that they had good cause for the belated amendment

---

[3] Under the scheduling order, amendment was to occur no later than December 19, 2014. (Dkt. No. 21).

7

because the tort claims were made available only after the district court's dismissal of the contractual claims. The Tenth Circuit disagreed. It rejected the argument that the economic loss rule was applicable to the tort claims and reasoned, therefore, that because plaintiffs could have asserted their tort claims within the deadline established by the court's scheduling order, they had not established good cause for amendment. *Id.*

Likewise, in *Zisumbo v. Ogden Regional Medical Center*, the Tenth Circuit considered whether amendment beyond the scheduling order date should be permitted. 801 F.3d 1185, 1196 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 1660 (2016). There, the plaintiff sued his employer for race discrimination and retaliation in violation of Title VII and for breach of the implied duty of good faith and fair dealing under Utah law. He subsequently moved to amend his complaint to add a § 1981 claim and additional state law claims based on the same facts underlying the Title VII race discrimination claims. *Id.* at 1194. He offered two explanations for the untimely amendment: first, that his lawyer did not realize until later that he could assert a § 1981 claim and second, that he only learned of the facts necessary to assert the state law claims in discovery. *Id.* at 1196. The Court rejected both arguments, holding that amendment was not appropriate because the plaintiff possessed all of the facts necessary to assert these claims well before the deadline for amending the complaint had expired. *Id.* The court explained, "belated realizations" that a claim not previously pled may be available, absent new facts, "do not justify granting an untimely motion to add new claims." *Id.*[4]

Considering the Mordens' motion to amend in light of this authority, the court must conclude that the Mordens have not shown good cause for amendment. Here, the Mordens do not

---

[4] Notably, the Court in *Zisumbo* considered this issue under Rule 15's more lenient standard. 801 F.3d 1185, 1196 (10th Cir. 2015).

dispute that they failed to raise any affirmative claim for breach of the contractual obligation to indemnify Belsen Getty within policy limits within the time permitted by the scheduling order.[5] Nor do they argue that they learned of new information or relevant law that would implicate an express breach of contract claim. To the contrary, it is undisputed that the Mordens knew all of the facts and law necessary to raise an indemnification claim at the time they filed their initial complaint. Nevertheless, the Mordens contend there is good cause to amend due to XL's dismissal of its counterclaim because they relied on the existence of the counterclaim to provide them affirmative relief in the form of indemnification at policy limits. This argument is unpersuasive.

As explained, XL's declaratory judgment action is not the inverse of a claim that XL had a duty to indemnify Belsen Getty for the Mordens' claim. True, if XL successfully pursued the counterclaim it would have a judicial declaration that it was under no obligation to indemnify Belsen Getty. But the inverse is not automatically true. There are many scenarios in which the court could have rejected XL's counterclaim without ever making a definitive coverage determination. And even if the court did decide the declaratory judgment issue in the Mordens' favor, the Mordens still would not have enforceable judgment for damages in any particular amount. If the Mordens wanted a judgment for indemnification up to policy limits, nothing prevented them from bringing such a claim at the time they filed their complaint. Thus, as in *Gorsuch* and *Zisumbo*, the Mordens' decision not to plead an affirmative claim for relief in reliance on the counterclaim—whether the result of a strategic decision, an erroneous assumption

---

[5] This is confirmed by reference to the Mordens complaint, which seeks damages in the amount of $5,434,730 (Dkt. No. 2) and the Mordens' briefing in support of its motions for summary judgment, (*see, e.g.*, Dkt. No. 25 (stating, "this is an action to recover against XL for its bad-faith failure to settle claims"); Dkt. No. 46 stating, "the Mordens assert third-party bad faith claims against XL"). Notably, the Mordens do not assert that they have always pled an express breach of contract claim, nor do they ask the court to reconsider its prior ruling that its resolution of the Mordens' bad faith claims resolved the Mordens' complaint in its entirety.

of law or fact, or mere oversight—does not present grounds for amendment now that the counterclaim has been dismissed. Accordingly, amendment is prohibited by Rule 16(b)(4).[6]

## CONCLUSION

For the foregoing reasons, the court **GRANTS** XL's motion to voluntarily dismiss its remaining counterclaim without prejudice (Dkt. No. 81). The court further **DENIES** the Mordens' request for attorney fees as a result of litigating XL's counterclaim because the Mordens have not identified any fees they incurred litigating this issue. The court also **DENIES** the Mordens' motion to amend the complaint (Dkt. No. 82). This ruling now resolves all the claims with respect to all the parties. Therefore, the Clerk of Court is directed to enter final judgment in XL's favor as to the Mordens' bad faith and breach of fiduciary duty claims, and enter judgment in the Mordens' favor as to XL's counterclaim for declaratory judgment related to the interrelated wrongful acts provision.

SO ORDERED this 29th day of July, 2016.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[6] This conclusion makes it unnecessary for the court to consider whether amendment would be permitted under Rule 15(a)'s more lenient standard. *See Gorsuch*, 771 F.3d at 1242 ("Having concluded [plaintiffs] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so.").